Bernard **KABACK** and Florence Kaback, Plaintiffs,

v.

**SCHWEICKART & CO. et al.,**
**Defendants.**

**No. 74 Civil 5341.**

United States District Court,
S. D. New York.

May 27, 1976.

Weil, Gotshal & Manges, New York City, for plaintiffs; Neil Schwarzfeld, Joel Harris, New York City, of counsel.

Lunney & Crocco, New York City, for defendants Schweickart & Co., Winfield H. Schweickart, Golashesky, Bennett, Schwerin, Tomasulo and Reimer; Charles Crocco, New York City, of counsel.

Segal & Hundley, New York City, for defendant Alexander P. Kelly, III; Marvin Segal, Margaret L. Shaw, New York City, of counsel.

Langberg & Ringel, New York City, for defendant Arthur Rafkind; Nathan Ringel, New York City, of counsel.

Freeman, Meade, Wasserman, Sharfman & Schneider, New York City, for defendant Howard M. Miller; J. Owen Zurhellen, New York City, of counsel.

## OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

Plaintiffs Bernard and Florence Kaback, husband and wife, college educated, both principals in the New York City school sys-

tem, bring this action against various defendants seeking recovery of the value of securities, essentially upon claims of violations of Section 10(b) of the Securities and Exchange Act of 1934, and of Rule 10b–5 promulgated thereunder.

The defendants are: Schweickart and Co., a limited partnership, and its general partners Winfield H. Schweickart, Jean M. Golashesky, Frank J. Bennett, Frederick W. Schwerin, Nicholas G. Tomasulo, Robert H. Reimer, Eugene M. Cohen, Alexander P. Kelly, III, and Arthur Rafkind. Also named as a defendant is Howard M. Miller, who was a limited partner of Schweickart and Co., and through whose introduction to Schweickart's partners plaintiffs first entered into the transactions, the final one of which is the subject of this litigation. Plaintiff Bernard Kaback, in connection with those transactions, acted on behalf of both plaintiffs. Accordingly reference to him will be deemed to refer to both.

During the period from about 1948 to 1969, Kaback invested in securities upon the recommendation of a friend and lawyer, and apparently was quite successful in his investments. His experience during those years indicates that he was knowledgeable with respect to securities transactions and their nature; he was familiar with the ways of Wall Street and its jargon. He was sufficiently familiar with so-called "tax shelters" to seek their advantages.

Kaback first met defendant Howard Miller at a school teachers' convention through a Dr. Abramson. Miller and his wife at that time had a substantial financial interest in Schweickart and Co. as limited partners to the extent of $400,000. Thereafter, plaintiffs the Millers and Dr. Abramson met socially on several occasions and discussed their respective investments. Dr. Abramson and Kaback had expressed to Miller an interest in investment opportunities. About August or September 1969, Schweickart and Co. was seeking to expand its business with additional capital. Miller, after investing an additional $350,000, communicated with Dr. Abramson and suggested to him the opportunity to invest in Schweickart and Co.; Dr. Abramson declined the offer because he was without the required funds. Abramson then suggested that Kaback might have adequate funds, and Miller contacted Kaback.

The Kabacks had securities in their portfolio in excess of $200,000. They were interested in obtaining further income in addition to the dividends payable on these securities. Their initial discussion with Miller related to an investment in Schweickart and Co. as subordinated lenders of securities with interest payable on capital value. Miller acted as a sort of intermediary between Kaback and Stanley A. Nabi, then a general partner of Schweickart and Co. and not a defendant in this action. Thereafter all negotiations and correspondence with respect to the transaction were between Kaback and Nabi or Winfield Schweickart. A return of six percent on the market value of the securities, then valued at $252,500, was agreed upon, and documents evidencing the investment as a subordinated loan to Schweickart and Co., the partnership, were executed by Kaback. However, based upon a computation, such a transaction was deemed undesirable in view of the Stock Exchange's restrictions on Schweickart and Co.'s capital structure. Thereupon it was decided that the transaction would be on the basis of a personal loan by Kaback to Winfield Schweickart, the managing general partner of Schweickart and Co. Plaintiff was so advised. An explanatory letter sent to him states: "The New York Stock Exchange does, however, welcome the addition of capital through the means which have been suggested to you—the lending of securities to general partners who in turn lend them to the Firm."

New agreements were prepared which were duly executed by Kaback and Schweickart whereby the securities were loaned personally to Winfield Schweickart, who was to use the securities or their proceeds to increase his capital investment in Schweickart and Co. The plaintiff understood he was making a personal loan to Winfield Schweickart and the note signed

by both parties evidences this. The initial transaction occurred in September 1969. Upon expiration of the loan it was renewed from time to time, in each instance as a personal loan to Winfield Schweickart. With respect to each of these successive transactions separate agreements were executed by Kaback and Schweickart which reflect, as in the instance of the first loan, that they were personal loans to the latter. The dates of the subsequent transactions are September 10, 1970, March 10, 1971, March 3, 1972 and September 30, 1972. The securities involved in all these transactions were substantially those that had been originally loaned to Schweickart.

Finally there is the note dated May 31, 1973, which is the subject of the instant litigation. Prior thereto, plaintiff testified, he had discussed making an investment as a subordinated lender in another brokerage firm, Edwards and Hanly, which had offered him 6.2 percent interest on his loan. Kaback testified he did not invest in Edwards and Hanly because both Miller and Schweickart, whom he had not met personally up to this time, told him that Edwards and Hanly had lost money in the Equity Funding debacle. Schweickart agreed to pay him the interest rate he had discussed with Edwards and Hanly, to wit, 6.2 percent, and the note of May 31, 1973, was executed in that amount. This note, in addition to bearing Winfield Schweickart's signature, also was signed by the defendants Jean Golashesky and Alexander P. Kelly, III.

While plaintiffs in their complaint make many charges of fraudulent conduct, upon the trial they were narrowed. First they charge that Winfield Schweickart made a material misrepresentation prior to the May 31, 1973 renewal of the loan when he stated that Schweickart and Co. was in "sound financial condition," and further that Schweickart omitted to state material information in not advising plaintiffs that Schweickart and Co. had suffered monthly losses commencing in February 1973, which by the end of April totaled in excess of $300,000. The Kabacks seek to hold not

only Schweickart individually and as a general partner of Schweickart and Co., but also all the other Schweickart general partners in addition to Kelly and Golashesky, who signed the note.

Plaintiffs charge that Miller violated the securities laws in that Miller knew of the firm's losses in early 1973, but failed to inform them of the losses when Miller allegedly advised the Kabacks to keep their investment in Schweickart and Co. and not to transfer it to Edwards and Hanly. Miller denies the factual basis of the charges against him. Kaback also charges that Miller failed to disclose that he had withdrawn as a subordinated lender in September 1971. Again Miller denies the charge and alleges that he did inform Kaback of his withdrawal in that capacity.

█ A preliminary and fundamental issue is whether, as plaintiffs contend, their investment by way of the loan of their securities was made in Schweickart and Co., the partnership as an entity, or was made personally to Winfield Schweickart. While there are references in some exhibits to plaintiffs as subordinated lenders of Schweickart and Co., the weight of the evidence establishes that the transaction was a personal one entered into with Winfield Schweickart and was so understood by Kaback from the very inception of their relationship. Thus, when it was decided because of the capital structure situation that the transaction was to be a personal loan to Winfield Schweickart, the agreement executed by Kaback and Schweickart makes this abundantly clear. It begins: "Mr. Bernard Kaback has this day loaned to Mr. Winfield H. Schweickart various shares of stock, market value of $252,500.00." In a letter to Kaback dated September 22, 1969, Schweickart stated: "The New York Stock Exchange does, however, welcome the addition of capital through the means which have been suggested to you—the lending of securities to general partners who, in turn, lend them to the Firm. There is always adequate documentation to reveal the true ownership of securities and to protect their interests in the case of death of the borrow-

ing partners." Plaintiffs knowingly accepted the shift in the nature of their investment from a subordinated loan to the firm to an individual loan to Winfield Schweickart, and thereafter each transaction or renewal was evidenced by the personal commitment of Winfield Schweickart. The last note, the immediate subject matter of this litigation, also signed by Kelly and Golashesky, was similarly a personal loan to Schweickart and was executed in the same form as the first note quoted above.

We consider the liability of each of the signers—that is, Winfield Schweickart, Jean Golashesky and Alexander Kelly, under the instrument of May 31, 1973.

■ First, Winfield Schweickart clearly is personally liable for the value of the securities on the day they should have been returned under the note, May 31, 1974—to wit, $297,077.87, plus $444.80 cash due plaintiffs, a total of $297,522.67, with interest thereon from that date. The question remains whether Winfield Schweickart violated the securities acts, as plaintiffs charge. I find he did not materially misstate Schweickart and Co.'s financial condition prior to the execution of the May 31, 1973 instrument. There has been no showing that its financial condition was materially different from what it had been previously. The fact that in the early months of 1973 the firm sustained losses did not by itself impair its financial condition. The partnership in prior years had suffered losses in particular periods and yet wound up with a profit at the end of the year.

■ I do find, however, that Winfield Schweickart failed to inform plaintiffs that Schweickart and Co. was sustaining monthly losses commencing in February 1973, which continued up to May 31, 1973. But, assuming without deciding this was a material matter and that it should have been conveyed to plaintiffs, the question remains whether the omission was made with intent to defraud.[1] Upon the record I find the plaintiff has failed to sustain the burden of proof as to this element. Schweickart himself was a substantial investor in the firm, entirely apart from the funds derived from plaintiffs' securities. He had confidence in the firm's prospects and expected that it would prosper as it had in previous years, although market conditions were not as favorable as in the past. During the entire period of their investment, commencing in May 1969 and continuing to the date of the transaction at issue, May 31, 1973 and thereafter, plaintiffs (as well as other investors) received monthly the agreed-upon interest. The payments continued until Schweickart and Co., due to heavy losses in the municipal bond trading department, loss of commission income and excessively high interest rates, was forced to close its doors in July 1974. The failure to advise plaintiffs of the losses in particular months was not due to any purpose on the part of Schweickart to defraud or mislead plaintiffs or to deprive them of their funds or to enrich himself at their expense. Moreover, during the close to five years that the Kabacks loaned their securities to Schweickart, not once did they request any financial statement of Schweickart and Co. or any information as to its financial status. The fact is that their concern was only with receiving the monthly interest on the market value of their securities. Whether there were profits or losses or the financial condition of Schweickart and Co. were matters of indifference to them so long as the interest payments were made. Thus, as to Winfield Schweickart, plaintiffs are entitled to judgment only on the May 31, 1973 note, in the amount indicated above.

■ Alexander Kelly and Jean Golashesky, who also signed the note dated May 31, 1973, seek to disavow any liability by reason thereof upon a claim, not entirely clear, that their signatures were merely intended to record the fact that they knew that Winfield Schweickart's transaction was

---

1. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 4451 (1976).

with plaintiffs and that the securities belonged to the plaintiffs. I reject this as without substance. They signed because plaintiffs requested additional assurances beyond the personal obligation of Winfield Schweickart. Each signed in his or her individual capacity. In so doing each lent his or her name to Winfield Schweickart as an accommodation to him.[2] Whether their signatures on the document are deemed a guarantee of payment of Schweickart's obligation, or a primary obligation by each, there is no basis upon which they can disavow liability. They signed for a purpose—their signature had a meaning.[3] Plaintiff accordingly is entitled to judgment against Golashesky and Kelly individually in the sum of $297,522.67 with interest from May 31, 1974.

As to the remaining general partners and Schweickart and Co., plaintiffs seek to hold them, as already mentioned, upon their claim that in fact the loan of the securities was to the firm, the partnership. But I have held that the transaction was with Winfield Schweickart individually, and further hold that plaintiffs have failed to sustain their burden of proof upon their claims against the general partners and the firm. While it is true that the securities were availed of by the firm, this was contemplated and agreed upon when the transaction was consummated with Winfield Schweickart as an individual, and the agreement with him expressly provides that he could contribute the securities to the partnership; that, however, did not make the firm or the general partners liable to plaintiffs. Indeed, the note explicitly states:

"Bernard Kaback and/or Florence Kaback do not reserve or retain any property right in the stock loaned as aforesaid but their rights hereunder shall consist solely of the contractual right against Winfield H. Schweickart individually to the repayment of said loan  . . . and the Firm shall not be under any liability to Bernard Kaback and/or Florence Kaback by reason of this agreement nor shall it be under any obligation whatsoever to Bernard Kaback and/or Florence Kaback on account of said stock or any cash or stock dividends or rights received by Winfield H. Schweickart or the Firm."

So, too, while the Kabacks received their interest checks from Schweickart and Co., the amounts were debited against the capital account of Winfield Schweickart. The clear and unambiguous terms of the note, and plaintiffs' knowing acceptance thereof, compel the conclusion that the note was an obligation of Winfield Schweickart individually and not of the partnership.

Plaintiffs, however, seek to hold the remaining general partners upon an alternative theory—that the firm guaranteed in writing repayment of the loan. Here they rely upon a letter dated March 3, 1973, sent to plaintiff with respect not to the note which is the subject of this suit, but a prior note executed March 3, 1972. The letter enclosed Schweickart's note and reads: "Enclosed you will find the redrawn note jointly lending your securities to me [Schweickart]." It continues: "Securities loaned to a general partner of the firm become general capital and have the same

---

**2.** Cf. Uniform Commercial Code § 3–415; *Glickman v. Dick,* 26 Misc.2d 271, 206 N.Y.S.2d 44 (Sup.Ct., N.Y.Co.1960).

**3.** Cf. *Zim Israel Nav. Co. v. Sealanes Int'l, Inc.,* 17 A.D.2d 393, 235 N.Y.S.2d 296, 299 (1st Dep't 1962) ("It will not be held the parties intended to engage in a useless or futile act, but on the contrary intended to execute an agreement valid and binding in all respects"); *Gloucester Mut. Fishing Ins. Co. v. Boyer,* 294 Mass. 35, 200 N.E. 557, 560 (1936) ("[E]ffect is to be given if possible to every word of an instrument and to every signature upon it. . . . One not mentioned as a promisor in the body of an instrument may become a joint promisor by signing it with the apparent intention of assuming some obligations. . . . The only effect that can be given to the signatures of the defendants is that they guaranteed the performance . . . of the promise expressed on the face of the instruments"); Uniform Commercial Code § 3–402, Official Comment ("Thus by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note. . . .").

status as any other property pledged by such general partner. However, in such cases, the loan is an accommodation to the firm; therefore, should any calamity befall the borrower as an individual, the firm itself and the then general partners would be responsible to the lender." Schweickart then concludes: ". . . [I]n order that you may be assured of the facts as outlined, I have asked Mr. Nabi, another general partner, to sign this letter jointly with me." Nabi did sign.

Plaintiffs construe this as a guarantee by all the partners of the firm. Clearly it is not. It is an explanation of Schweickart's own understanding of the transaction with the added assurance thereof by Nabi. But even assuming it was a guarantee by the firm itself and binding upon the partners, the March 3, 1972 note, which was signed only by Schweickart, was satisfied and new notes executed, including the one dated May 31, 1973, about which this suit centers. The new notes contained explicit language disclaiming any liability of the firm, to which plaintiffs assented.

Finally, there is the plaintiffs' claim against Miller. Other than making the initial introduction of plaintiff to Schweickart and Co., I find Miller played no significant or substantial part in the initial or subsequent transactions, all of which plaintiff negotiated and consummated with either Winfield Schweickart or Stanley Nabi.

Miller himself was a substantial investor in Schweickart and Co. His and his wife's limited partnership investment totaled $400,000, all of which was lost, just as plaintiffs' investment was lost when Schweickart and Co. liquidated its business. Plaintiffs contend that Miller violated the securities acts with respect to the May 1973 investment because he failed to disclose that Schweickart and Co. sustained losses early in 1973, and further because he omitted to inform plaintiff that he had withdrawn in September 1971 as a subordinate lender of $350,000, although continuing his

position as a limited partner for $400,000. These claims are not supported by the weight of the credible evidence—this even assuming they were material matters. Upon the entire record I find that, as to Miller, plaintiffs have failed to sustain their burden of proof either as to any of the allegations of wrongful conduct contained in their complaint or as narrowed and contended for upon the trial.

In conclusion, I find plaintiffs are entitled to judgment in the sum of $297,522.67, plus interest from May 31, 1974, against Winfield Schweickart, Jean Golashesky and Alexander P. Kelly, III, as individuals. All other defendants are entitled to judgment in their favor dismissing the complaint upon the merits.[4]

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

---

4. Plaintiffs' allegations of conversion are without substance. All of the agreements gave Winfield Schweickart the authority to sell the securities or otherwise dispose of them as he saw fit.