Katherine C. WALSH

v.

BUTCHER & SHERRERD.

Civ. A. No. 72-2525.

United States District Court,
E. D. Pennsylvania.

June 2, 1978.
As Amended June 9, 1978.

Richard A. Ash, Lyman & Ash, Philadelphia, Pa., for plaintiff.

Edward C. Mengel, Jr., White & Williams, Philadelphia, Pa., for defendant.

## MEMORANDUM

JOSEPH S. LORD, III, Chief Judge.

This detritus of the massive securities litigation which followed the bankruptcy of the Penn Central Transportation Company in 1970 is an action under the Securities Exchange Act of 1934 against a brokerage firm whose employee recommended to the plaintiff the purchase of Penn Central Company common stock in the fall of 1968. The plaintiff alleges that the defendant made omissions and misrepresentations as to material facts in connection with her purchase, in violation of § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and of Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. The defendant has moved for summary judgment pursuant to F.R.Civ.P. 56 on various grounds, and the plaintiff has moved for leave to file a second amended complaint pursuant to F.R. Civ.P. 15(a) which would add pendent state law claims for negligence.

## MOTION FOR SUMMARY JUDGMENT

### I. Res Judicata Defense.

We are surprised, and somewhat shocked, at the defendant's assertion that res judicata bars the plaintiff's Rule 10b–5 claim because she was a member of the plaintiff class in the court-approved settlement in *Robinson v. Penn Central*, C.A. No. 70–2010 (E.D.Pa.), in which the defendant also participated as a member of the defendant class. We do not intend to waste time considering this argument, other than to quote the following colloquy we had on November 3, 1976, with counsel for the plaintiff class in *Robinson v. Penn Central*:

"COUNSEL:

"One objection was from the firm of Lyman & Ash, which wished to be assured that if their client, a Miss Walsh, were to not opt out and were to participate in the distribution resulting from this settlement, that acceptance of that distribution would in no way constitute a release of plaintiff Walsh's claim in *Walsh v. Butcher & Sherrerd* as well as *Jamison* and *Butcher & Sherrerd*, which, as Your Honor knows, is before Your Honor, still pending. . . .

"So, we have discussed this with counsel, with Lyman & Ash . . . and they have advised me that if Your Honor would consider inserting into the record today a statement to the effect that these settlements and the releases filed by class members herein were not intended to and shall not have any effect upon and shall

not be considered releases of those claims asserted in . . . Walsh against Butcher & Sherrerd, 72–2525, Eastern District of Pennsylvania. . . .

"If Your Honor would be willing to agree with that kind of statement and on the record, that would satisfy counsel.

. . .

THE COURT:

"I adopt in toto and in ipsis verbis the statement that you have just made referring to the cases which you have mentioned by name."

N.T. 41, 43, 44. Defendant's counsel was present and sat by in silent acquiescence. We will not lend ourselves to a sand-bagging eighteen months later.[1]

II. *Materiality of Defendant's Misrepresentations and/or Omissions.*

■ Plaintiff's theory of Rule 10b–5 liability revolves around the investment activity of Howard Butcher, III, the senior partner in the defendant partnership and owner of approximately a 65% interest of it. It is alleged that from 1959 through 1968 Butcher manifested a consistently bullish attitude concerning Penn Central (and, before the 1968 merger which created Penn Central, Pennsylvania Railroad) stock, of which he and his wife were large holders.[2] The defendant's securities sales personnel and the investing public believed in 1968, according to the amended complaint, that Butcher was the premier bull and touter of Penn Central stock, that Butcher had access to special information about Penn Central, that Butcher was an investment genius who was seldom or never wrong and that Butcher had never sold any of his holdings in Penn Central. Amended Complaint at ¶ 11.

It is alleged that the price of Penn Central stock had risen to approximately $70 per share in 1968, mainly as a result of defendant's activities, and the price was highly sensitive to any negative change in the evaluation of the stock by defendant or Butcher. *Id.* at ¶ 12–14.

Plaintiff's allegation of securities fraud is that Butcher concluded in about August of 1968 that Penn Central stock was worth less than its market price and decided to begin selling his and his wife's shares and to recommend that some of his customers sell. *Id.* at ¶ 19. It is alleged that Butcher was aware that public disclosure of his decision would cause the price of the stock to decline and that he consequently entered into a fraudulent scheme to conceal this information. *Id.* at ¶ 20. Defendant is charged with fraud both in omitting to state Butcher's conclusion concerning the price of the stock and decision to sell and in misstating those facts in press releases and memoranda to sales personnel. *Id.* at ¶ 21.

Defendant has made some attempt to demonstrate that as a matter of law it did not omit to state or misrepresent any material facts. It points to the facts that Butcher purchased 500 shares of Penn Central stock in August 1968 and that he did not sell any shares until late October, two months after he allegedly had formed an intent to sell. We are somewhat underwhelmed on this record by plaintiff's case that Butcher had arrived at conclusions and decisions with regard to Penn Central stock in September and October 1968, which conclusions and decisions are the basis of the alleged misrepresentations and omissions. We must agree with the plaintiff, however,

---

1. We reject the defendant's argument that the doctrine that a court which resolves a class action cannot predetermine the res judicata consequences of that action controls here. *See* Committee Note of 1966 to F.R.Civ.P. 23 as Revised in 1966, quoted at 3B *Moore's Federal Practice* ¶ 23.01[11.–3], at 23–34 (1977); 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1789, at 176 & n.22 (1972); *Restatement of Judgments* § 86 & Comment h (1942). We doubt that this rule ever can be employed to *broaden* the res judicata effect of a class action, *Taunton Gardens Co. v. Hills,* 557 F.2d

877 (1st Cir. 1977), and it certainly is ineffective where the parties in the second case were class members who had full notice of and knowingly consented to the court's statement of limitations on res judicata upon which a court's approval of a settlement was based.

2. Butcher is alleged to have served as a director of the Pennsylvania Railroad Company and, after it merged with the New York Central Railroad, Penn Central, from 1962 until September of 1968. Amended Complaint at ¶ 10.

that there is sufficient circumstantial evidence in this record for a finder of fact to make a reasonable inference that such conclusions and decisions had been reached.[3]

Defendant asserts that any such misrepresentations or omissions were not material as a matter of law, while plaintiff contends that the misstatements were material as a matter of law. The applicable test is the objective standard formulated by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976), requiring:

> "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

Because there is a single plaintiff in this 10b–5 suit, we are presented with a situation in which the objective requirement of materiality and the subjective requirement of reliance are not easily distinguishable. *See Thomas v. Duralite Co., Inc.*, 524 F.2d 577, 584 (3d Cir. 1975); *Harnett v. Ryan Homes, Inc.*, 496 F.2d 832, 838 n.20 (3d Cir. 1974). Because plaintiff's action is based on an open-market transaction rather than a direct-personal transaction (*i. e.*, one in which the defendant sold shares to the plaintiff, or vice versa), we will apply nonetheless a test of materiality that is objective and distinct from that of reliance. 2 A. Bromberg, *Securities Law, Fraud, SEC Rule 10b–5* § 8.3, at 199–201 (1967).

Materiality is a mixed question of fact and law which can be decided as a matter of law only if reasonable minds cannot differ as to whether the omitted or misrepresented facts would be significant to a reasonable purchaser of securities. *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. at

450, 96 S.Ct. 2126, *citing Johns Hopkins University v. Hutton*, 422 F.2d 1124, 1129 (4th Cir. 1970). We are unable to resolve the materiality of defendant's alleged omissions and misstatements as a matter of law. It is quite possible that, under the alleged and at this point uncontradicted facts concerning Butcher's and defendant's position with regard to Penn Central, a reasonable investor would have considered to be important Butcher's alleged conclusions about the stock and intention to sell his and his wife's shares. We are thus unable to grant the motion for summary judgment on the ground that there were no material omissions or misrepresentations.

### III. Plaintiff's Reliance on Alleged Omissions and Misrepresentations.

The amended complaint alleges that Butcher omitted to state and misstated his conclusions as to Penn Central stock and his decisions to reduce his holdings to A. Grant Campbell, defendant's employee and plaintiff's registered representative. Amended Complaint at ¶ 24. It is further alleged that defendant's fraudulent conduct caused Campbell to recommend that plaintiff purchase Penn Central stock, *id.* at ¶ 27, and that as a result of that recommendation she purchased in late October 1968 500 shares of Penn Central stock, *id.* at ¶ 25. This two-stage theory of causation provides the basis for the allegation that defendant's omissions and misstatements caused plaintiff to purchase Penn Central stock.

Where a § 10(b) action is based upon an alleged misrepresentation, the plaintiff bears the burden of demonstrating reliance along with the other necessary elements. In that event, the plaintiff would have to show that defendant's misrepresentations or omissions actually caused her to purchase Penn Central stock and to incur damages. *Rochez Brothers, Inc. v. Rhoades*, 491 F.2d 402, 410 (3d Cir. 1974). In the event that a

---

**3.** We note that there are two necessary inferences here: that the alleged conclusion and decision were reached and that they were reached at some time before plaintiff purchased her stock. Defendant's principal contention seems to be that the second inference could not be reasonably made by the fact-finder.

§ 10(b) claim is based on a failure to disclose, however, the burden of proving non-causation shifts to the defendant. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). With respect to material omissions, consequently, defendant must show that there is "clearly no reliance, that is, that even if the material facts had been disclosed, plaintiff's decision as to the transaction would not have been different from what it was." *Rochez Brothers, Inc. v. Rhoades,* 491 F.2d at 410. Defendant asserts that the crux of plaintiff's case is a misrepresentation rather than an omission, leaving the burden of proving subjective causation on her. Defendant's Reply Brief at 7. While we are at this stage uncertain on which side of the hazy boundary between misrepresentations and omissions defendant's conduct falls, *see McLean v. Alexander,* 420 F.Supp. 1057, 1076 (D.Del.1976), it is our present but not immutable opinion that "the circumstances of this case [involve] primarily a failure to disclose" or, at least, omissions as well as misrepresentations. *Affiliated Ute Citizens v. United States,* 406 U.S. at 153, 92 S.Ct. at 1472. We need not resolve the misrepresentation/omission issue at this time, however, since the placing of the burden of proof does not alter our conclusion on this issue.

Defendant contends first that plaintiff cannot recover because of her two-stage theory of reliance, *i. e.,* that she relied on Campbell and that Campbell relied on Butcher (and defendant). While we can find no authority directly discussing the issue of "third-party reliance", our understanding of the reliance element reveals that reliance of this kind cannot be deemed insufficient as a matter of law. While reliance provides the subjective component of the necessary relationship between the defendant's misrepresentation or omission and the plaintiff's action, there is of course no requirement in Rule 10b–5 cases that there be direct contact between the defendant and the plaintiff. 2 A. Bromberg, *Securities Law, Fraud, Rule 10b–5* ¶ 8.5(511) (1970). Rather, reliance means in this context causation, and the dispositive inquiry is "whether the plaintiff would have been influenced to act differently than [she] did act if the defendant had disclosed to [her] the undisclosed fact." *McLean v. Alexander,* 420 F.Supp. at 1076, *quoting List v. Fashion Park, Inc.,* 340 F.2d 457, 463 (2d Cir. 1965).

Defendant also contends that the first stage of the alleged reliance in this case, that Butcher's misrepresentations and omissions caused Campbell, who is now deceased, to recommend the purchase of Penn Central stock, is deficient. In particular, Campbell testified at his deposition that he did not pay attention to the recommended list of stocks put out by defendant and that no one could convince him that Penn Central stock was not undervalued at the time he recommended that plaintiff purchase it. Deposition of A. Grant Campbell, March 7, 1974, at 90, 102. This evidence, which is all we now have before us and may be all that is available at trial owing to Campbell's unavailability, makes us dubious indeed that Butcher's or defendant's conduct proximately caused plaintiff's purchase. We are nevertheless unable to grant summary judgment. To do so would be a usurpation of the fact-finding role because Campbell also testified that he knew of Butcher's large holdings of and enthusiasm for Penn Central stock and that he had great respect for Butcher's investment acumen. *Id.* at 66–67, 92–96. This evidence would permit an inference that Butcher's misrepresentations or omissions caused Campbell to recommend the purchase of Penn Central stock to plaintiff, and hence a genuine issue of material fact exists.[4] A decision as to who bears the burden as to reliance might very

---

4. We note that plaintiff need not establish that defendant's conduct was the sole or primary factor in her purchase and consequent injury, but only that it proximately caused that injury, *i. e.,* that it was a substantial factor in the decision to purchase. *McLean v. Alexander,* 420 F.Supp. at 1076–77, *citing Johns Hopkins University v. Hutton,* 326 F.Supp. 250, 260 (D.Md.1971) and *quoting List v. Fashion Park, Inc.,* 340 F.2d at 462. *See also Miller v. Schweickart,* 413 F.Supp. 1062, 1067–68 (S.D. N.Y.1976).

well affect the disposition at trial of this factual issue, but it does not affect our determination that one exists.

*IV. Duty to Disclose.*

■ The obverse side of the misrepresentation/omission coin imposes a burden on the plaintiff to demonstrate, if the defendant's conduct is characterized as an omission, a duty of the defendant to disclose material information. *Affiliated Ute Citizens v. United States,* 406 U.S. at 153, 92 S.Ct. 1456. We need not consider on this motion for summary judgment the defendant's contention that Butcher was as a matter of law under no duty to disclose his conclusions and contentions with respect to Penn Central stock because the defendant itself has characterized its alleged conduct as misrepresentations, which the complaint alleges as well as omissions, and we are unable to determine on this record the absence of misrepresentations. Since no inquiry as to duty is required for misrepresentations, summary judgment cannot lie on this ground. We do note, however, that Butcher was under no duty to disclose his mere opinions about Penn Central stock insofar as they were based on publicly available information. *SEC v. Texas Gulf Sulphur,* 401 F.2d 833, 848 (2d Cir. 1968) (en banc), *cert. denied sub nom. Coates v. SEC,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969), *citing* 3 L. Loss, *Securities Regulation* 1463 (1961). *See also* 2 A. Bromberg, *Securities Law, Fraud, Rule 10b–5* ¶ 8.2, at 197 (1967).

*V. Defendant's Fraudulent Intent.*

■ We start from the premise that summary judgment is rarely appropriate with respect to issues of intent. *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); *Bernstein v. Mediobanca Banca di Credito Finanziario-Societa Per Ozioni,* 69 F.R.D. 592, 598 (S.D.N.Y.1974); 10 C. Wright & A. Miller, *Federal Practice & Procedure*

§ 2730, at 583–84 (1973). To rebut defendant's evidence on a motion for summary judgment, a plaintiff in a Rule 10b–5 case must present only evidence which is sufficient to give rise to a reasonable inference that the defendant acted either with fraudulent intent or recklessly. *Coleco Industries, Inc. v. Berman,* 567 F.2d 569 (3d Cir. 1977). We see no point in addressing, as the parties have, the issue of whether the defendant partnership had the scienter required under § 10(b) without specific reference to any partners or other employees of defendant. Inquiring into the intent of a partnership or a corporation would be a futile task. Only a natural person can be scrutinized with respect to intent in any meaningful sense, and the only person whose fraudulent intent is alleged in the pleadings or suggested by any evidence on this record is Butcher. We conclude that the evidence we have of such intent, while hardly compelling, would be sufficient to support an inference by the fact-finder of fraudulent or reckless intent and hence precludes summary judgment.[5]

*VI. Liability of a Brokerage Partnership.*

As the foregoing discussion suggests, a partnership can be liable for a § 10(b) violation only if responsibility is imposed upon it for the conduct of its partners or other employees. The Third Circuit has cast doubt on the § 10(b) liability of corporations (and, it would seem to follow, of partnerships) under any circumstances in *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 884 (3d Cir. 1975), where it held that *respondeat superior* is inapplicable to impose secondary liability in securities cases. Defendant moves for summary judgment based on this authority.

■ We believe that the holding in *Rochez Brothers, Inc. v. Rhoades* that *respondeat superior* is inapplicable in securities cases does not control here for two reasons, and we therefore conclude that defendant

---

**5.** The citation by defendant of *Kaback v. Schweickart,* 415 F.Supp. 646 (S.D.N.Y.1976), on this point supports plaintiff's position that a trial is necessary as to defendant's scienter.

There the court made a factual finding *after trial* that the plaintiffs had not demonstrated an intent to defraud. 415 F.Supp. at 652. The jury here might well do the same.

might be liable for the alleged conduct of Butcher. First, the Third Circuit explicitly limited that holding to cases not involving "the type of relationship that prevails in the broker-dealer cases where a stringent duty to supervise employees does exist." 527 F.2d at 886 (footnote omitted). Because defendant was plaintiff's broker, such a duty existed. The rationale of the *Rochez Brothers* holding, that the application of *respondeat superior* would impose upon corporations duties to supervise broader than those contemplated by Congress under the Securities Exchange Act, does not apply to defendant brokerage firms, which have often been found to be under such obligations. *See id.* at 885–86 & n.11 (citing cases). We hold consequently that *respondeat superior* applies to a partnership or corporation which violates Rule 10b–5 in its conduct as a broker-dealer.[6] *See Plunkett v. Dominick & Dominick, Inc.,* 414 F.Supp. 885, 886–89 (D.Conn.1976), where Judge Newman arrived at a similar conclusion as a matter of risk of loss allocation as well as of case authority and Congressional intent.

■ Second, plaintiff has raised in her brief the possibility of liability under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t, which provides:

"Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action."

The Third Circuit has determined that § 20(a) liability requires culpable participation of the controlling person in the conduct violating the securities laws, *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d at 890, *citing Lanza v. Drexel & Co.,* 479 F.2d 1277, 1299

(2d Cir. 1973) and *Gordon v. Burr,* 366 F.Supp. 156 (S.D.N.Y.1973), *rev'd in part,* 506 F.2d 1080 (2d Cir. 1974). The complaint consistently avers the defendant's involvement in Butcher's allegedly fraudulent acts. The Third Circuit has not delineated what acts by a broker-dealer constitute culpable participation sufficient for § 20(a) liability. In particular, it has not determined whether the failure by a brokerage firm to supervise adequately its employees can be sufficient participation where the failure to supervise causes the conduct violating the securities acts. The Ninth Circuit has answered this question in the affirmative, *Hecht v. Harris, Upham & Co.,* 430 F.2d 1202, 1210 (9th Cir. 1970), and has explained that result as premised on the strong public policy reasons for holding a broker-dealer to a duty to supervise its representatives, which the Third Circuit has also recognized. *Zweig v. Hearst Corp.,* 521 F.2d 1129, 1135 (9th Cir.), *cert denied,* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

We infer from two aspects of the Third Circuit case law that a lack of supervision could be sufficient to impose § 20(a) liability in this circuit also. It was suggested in *Rochez Brothers, Inc. v. Rhoades,* that the limitations on corporate liability under § 20(a) should be construed *in pari materia* with those upon *respondeat superior* under § 10(b), and thus breaches of what the Third Circuit recognized as the broker-dealer's stringent duty to supervise employees ought to give rise to potential liability under both statutes. *See* 527 F.2d at 886, 890. *See also Zweig v. Hearst Corp.,* 521 F.2d at 1135. Secondly, the court in *Gould v. American Hawaiian Steamship Co.,* 535 F.2d 761 (3d Cir. 1976), cited as in accord with the *Rochez Brothers* analysis the opinion of the *district court* in *Gordon v. Burr,* 366 F.Supp. at 168, in which the court found a § 20(a) violation based on a brokerage firm's inadequate supervision of salesmen. 535 F.2d at 779 n.17.[7] We need not resolve

---

**6.** We see no reason in logic or in the cases to distinguish between a partnership and a corporation in regard to liability for the violation of securities laws by agents.

**7.** The Second Circuit reversed as unsupported in the record the district court's § 20(a) factual finding of culpable participation without commenting on the adequacy as a matter of law of

this issue now, however, because defendant has not shown the absence of any genuine factual issue as to its lack of culpable participation under any measure of § 20(a) liability.[8]

For the foregoing reasons, we will deny defendant's motion for summary judgment.

### PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff has moved pursuant to F.R. Civ.P. 15(a) to amend her complaint for the second time to add pendent state-law claims of negligent breach of duty. Count One of the second amended complaint is virtually identical to the amended complaint, and Count Two alleges negligence arising out of the facts involved in the § 10(b) claim. Count Three is an averment that Campbell negligently breached the duty of due care he owed to plaintiff by recommending her purchase of Penn Central stock and failing to void that purchase in light of a November 6, 1968, report recommending that the stock not be purchased at the then-market price and in failing to disclose to plaintiff the report's existence. In Count Four the defendant is alleged to have breached its duty of care by failing to supervise diligently Campbell's handling of plaintiff's account and her purchase of Penn Central stock.

Rule 15(a) mandates that leave to amend "shall be freely given when justice so requires." *See* 3 *Moore's Federal Practice* ¶ 15.08[4], at 895–96 (1964). Defendant opposes the motion to amend on the grounds of undue delay, prejudice to it and the broadening of the scope of trial under the second amended complaint.

Plaintiff excuses her delay in advancing the theories of liability in Counts Three and Four by contending that the November 6, 1968, report of the defendant's investment research department which provides the basis of this theory was not obtained through discovery until shortly before this motion

was filed. While defendant correctly points out that other evidence might have generated a theory of Campbell's or supervisory negligence, the centrality of this report to such claims and the lateness with which defendant tendered it to plaintiff lead us to conclude that the delay was not undue as to Counts Three and Four. Such "due" delay would not justify denying the motion. *Thomas v. Medesco, Inc., Division of Harvard Industries, Inc.,* 67 F.R.D. 129, 131 (E.D.Pa.1974).

Adding these counts unquestionably will broaden the scope of this case to include plaintiff's transactions with defendant generally and defendant's supervision of its employees.[9] Accordingly, defendant may have to depose the plaintiff again and present expert testimony as to the handling of her account by Campbell. For the most part, however, the factual issues will overlap between Count One and these counts; and the additional discovery required will not be great. This is not a case where granting the motion "would unduly complicate the issues [and] result in unnecessary confusion." *Suehle v. Markem Machine Co.,* 38 F.R.D. 69 (E.D.Pa.1965). *See also Portsmouth Baseball Corp. v. Frick,* 21 F.R.D. 318 (S.D.N.Y.1958).

The only other prejudice which is apparent or argued by defendant is that it has lost the opportunity to discuss the new theories of liability with Campbell. While his unavailability unquestionably would create problems in a trial of his negligence, we deem this prejudice insufficient to deny plaintiff's motion for several reasons: the defendant's responsibility in large part for the delay (by tendering the November 6, 1968, report more than four years after plaintiff's request to produce documents was served), the extensive discussion of plaintiff's securities transactions generally in Campbell's deposition, the lack of any connection between plaintiff's delay in

---

insufficient supervision by a broker. 506 F.2d at 1086.

**8.** We also do not decide at this time whether Butcher & Sherrerd was a "controlling person" within the meaning of § 20(a), a determination which would depend on facts about the relationship between it and Butcher which are not

before us. *See Rochez Brothers, Inc. v. Rhoades,* 527 F.2d at 890–91.

**9.** The latter, as we have noted, might be an issue in the case under § 20(a) of the Securities Exchange Act.

amending her complaint and Campbell's unavailability at trial and the fact that plaintiff bears the burden of proof as to the elements added to the case. Any hardship defendant might suffer from allowing the complaint to be amended does not amount to the "undue prejudice" which would justify denial of the motion, and to deny it would not be in the interests of justice. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

As to Count Two, involving the same facts as the securities law claim, plaintiff has advanced no justification for her delay, and that delay consequently is "undue." Because we will grant her motion as to the other counts in the second amended complaint and because defendant is not prejudiced by including this count, however, we will permit the amendment.[10]

In the exercise of the broad discretion we have in deciding a Rule 15(a) motion, we will grant the plaintiff leave to amend her complaint. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971).

---

**10.** This decision is not inconsistent with our opinion in *Albee Homes, Inc. v. Lutman,* 47 F.R.D. 258 (E.D.Pa.1966), in which we determined that undue delay itself is sufficient for a denial of a motion to amend under *Foman v. Davis.* We reiterate that undue delay is sufficient to *warrant* denial of leave to amend, but it does not mandate that disposition.